STATE OF IOWA et al., Appellants, v. FRANK BUTKA et al., Appellees.

No. 45495.

AUGUST 4, 1941.

 

John M. Rankin, Attorney General, G. H. Clark, Special Assistant Attorney General, and Ben F. Martinsen, for appellants.

France & France and Ernest O. Work, for appellees.

HALE, J.—This is an action in equity for specific performance of a contract for the conveyance of real estate. The defendants admit the signing of a contract but allege that the contract set out by the plaintiffs was not the entire contract but that the plans for the paving, Project FA-18, were a part of the contract; that the plaintiffs had not complied with the contract in that at the time the contract was signed it was a part of the contract and within the contemplation of the parties that the new curve and junction between or connecting primary road No. 67 and the proposed new primary road No. 30 was to be constructed, and that defendants' oil station, including the buildings and pumps, were to be removed to a point east of the new junction and that they were to be in the same relative position with reference to the proposed new junction that they occupied with reference to the old curve and junction as they then stood. The trial court found in favor of the defendants and dismissed the plaintiffs' petition and plaintiffs appeal from the decree entered.

The controversy in this case originated in the proposed change of highway No. 30 (the Lincoln Highway). It originally ran from the west to the east, and, at about the point where defendants' service station and premises were located, curved and ran in a northeasterly direction into the city of Clinton. At the point where it thus started to curve it was joined from the

south by highway No. 67, which continued on No. 30 northeasterly. The commission deemed it advisable to change No. 30 by running it nearly due east beginning where it curved toward the northeast. As part of this plan it was proposed to curve No. 67 to the east, making its point of intersection with No. 30 several hundred feet east of the point where it originally joined that road. To accomplish these changes it was necessary to bring No. 30 farther south and over, through, and across the tract occupied by defendants' service station and buildings. Negotiations for the purchase of defendants' land were entered into, resulting in a contract dated April 19, 1939, the material parts of which are set out as follows, defendants Butka being party of the first part and plaintiffs being party of the second part:

"In consideration of $1.00 receipt of which is hereby acknowledged, the party of the first part hereby agrees to furnish to the second party an easement for use as a public highway, to the real estate situated in Section 15, Township 81 N. Range 6 E., County of Clinton, State of Iowa, to-wit:

"From Sta. 1930 plus 00 plus or minus to Sta. 1940 plus 89 a strip variable ft. wide each side all land measured from centerline of proposed highway as shown on plans for Project No. FA-18. This contract supersedes one dated Sept. 16, 1938. Second party agrees to deed to first party free from all encumbrance, the land Sta. 1934 plus 40 to Sta. 1936 plus 35 plus or minus lying more than 60 ft. south of centerline on tangent and north of a line 125 ft. from centerline. From Sta. 1936 plus 35 plus or minus to Sta. 1938 plus 30 all land lying south of section line north of a line 125 ft. south of centerline. The intention being that all land conveyed shall be in Camanche Township. Second party agrees to move at its expense, the filling station building and the garage easterly to Sta. 1935 plus 50 plus or minus."

(Here follow detailed specifications for buildings and surrounding premises when buildings are removed.)

The contract further provides:

"South of the station a dry wall is to be constructed to permit raising fill to proposed grade without encroachment on adjacent land. The wall will be 50 ft. to 60 ft. long. Top soil

will be placed around the station to aid in growing grass. Second party to furnish a drilled well corresponding to the present one. The relative location of the house, gas pumps, garage and well to be approximately as at present. The exact location to be determined by first party and the engineer in charge of construction. A double ended concrete driveway 20 ft. wide to the station and to each side of the pumps to be constructed by second party providing turnouts as easy or better than at present and having due provision for drainage. Pumps to be 12 ft. south of right of way line and 15 ft. north of building."

This is followed by further specifications, and the contract continues:

"All work to be done in a workmanlike manner and the entire job completed as early as weather permits. A damage of $10.00 per day to be paid for the time gas pumps are disconnected due to the move from the old to new location. The intention being that fill and foundations will be made at new location before pumps are moved. Second party to pay for moving tanks and pumps. First party will make any necessary settlement with the tenant Louis Peters. The area west of the house to be surfaced with stone or gravel for a parking space. The concrete driveway is to be constructed at the time the new pavement is laid. A concrete driveway to connect garage to station driveway.

"It is hereby agreed that possession of the premises is the essence of this contract and that party of the second part may take immediate possession of the premises upon the signing of this contract, for the purposes above set forth, and first party further agrees to convey to second party for the consideration hereinafter named, on or before the ...... day of .........., 19......

"Party of the second part agrees to purchase the above described real estate or take easement thereto for road purposes and to pay therefor upon delivery of warranty deed, or easement, conveying good and sufficient title. *　*　*

"And all verbal agreements are merged in this written contract. Should the highway as finally located require none of the real estate described, this contract becomes null and void. Any provisions on the reverse side of this contract are a part of this

contract as fully as if written on this side. Party of the first part consents to the establishment of the proposed road and relinquishes all claims for damages.''

This agreement is signed by Mary B. Butka and Frank Butka, and I. H. Knudson, Chairman.

Plaintiffs afterwards decided not to construct the curve on highway No. 67 which would have brought the junction with highway No. 30 farther east, as originally planned.

Evidence was introduced to the effect that the relocation of the filling station at a point approximately 600 feet east of the point where road No. 67 now joins road No. 30 will result in loss of business to the defendants. It is apparent that such a station at the junction of two main roads is better located than at other points along a highway, and that sales will ordinarily be greater and such location is productive of more business. It naturally was to the interest of defendants that the junction of the roads be at or near this new location.

I. Plaintiff-appellants' first objection is to the admission of oral and extrinsic evidence as to the understanding of the parties, that defendant-appellees' defense is based on alleged conversations had with plaintiffs' representative, C. E. Apple, and the negotiations leading up to the signing of the contract; that defendants contend that it was their understanding from these oral conversations and from plats of the highway project shown them that a new curve was to be built at the junction of the highways and that defendants' service station would be located at the end of the new curve, and that by plaintiffs' failure to construct such curve defendants are excused from performing under the contract. Plaintiffs contend that without such evidence a decree of specific performance would necessarily have been the consequence, and that such testimony was an attempt to vary and change the terms of a written instrument, which is the best evidence of what it contains and what the agreement was between the parties.

Evidence of conversations between plaintiffs' agent and defendants, and with reference to the plans of the proposed new road showing the curve noted thereon, and as to the location of survey stakes, was introduced. Such evidence would tend to show that defendants' contention was correct. Plaintiffs, how-

ever, insist that such evidence is inadmissible. Under the circumstances of this case we do not so hold. It has been held, as an aid to the construction of contracts, whether such contract is ambiguous or unambiguous, that accompanying surrounding circumstances may be considered. See cases cited in Iowa Annotations to Restatement of Contracts, sections 235 and 230, citing Counselman v. Reichart, 103 Iowa 430, 72 N. W. 490; McRobert v. Bridget, 168 Iowa 28, 149 N. W. 906; Elzy v. Waterloo, C. F. & N. R. Co., 193 Iowa 330, 183 N. W. 378, 184 N. W. 745; Younglove v. Hoberg, 195 Iowa 281, 191 N. W. 985; First Nat. Bank v. Branagan, 198 Iowa 453, 198 N. W. 659, 36 A. L. R. 548; Seeger v. Manifold, 210 Iowa 683, 231 N. W. 479; and other cases cited.

It is well settled that oral testimony is admissible to show the facts and circumstances attending the execution of an ambiguous instrument as an aid to its construction. Seeger v. Manifold, supra; Fairfax State Bank v. Coligan, 211 Iowa 670, 676, 234 N. W. 537, 539; Cedar Rapids Sav. Bank v. American M. & S. Co., 208 Iowa 150, 154, 225 N. W. 339, 341; West Branch State Bank v. Farmers Union Exchange, 221 Iowa 1382, 1384, 268 N. W. 155, 156, and cases cited; Mealey v. Kanealy, 226 Iowa 1266, 1278, 286 N. W. 500, 506, 31 A. L. R. 945, and cases cited; Zimbelman v. Boone Coal, Inc., 220 Iowa 1310, 263 N. W. 335. Among the various provisions of the contract appear the words: "The relative location of the house, gas pumps, garage and well to be approximately as at present." Following this are the words: "The exact location to be determined by first party and the engineer in charge of construction." It is claimed by plaintiffs that these words mean the location of the buildings relative to one another, while the defendants insist that "relative location" means relative to the intersecting road as it entered highway No. 30. Neither construction is free from doubt as to exactly what was intended, if based solely on the language of the contract and the context; but we believe that there is sufficient doubt as to make the oral testimony admissible as to the proposed position of the buildings when removed, especially testimony as to the facts and circumstances surrounding the transaction. See Restatement of Contracts, section 235; Vorthmann v. Great Lakes Pipe Line Co., 228 Iowa 53, 289 N. W. 746, and cases cited. Such

testimony when admitted makes it apparent that the new location was to be such as to serve the flow of traffic on both highway No. 30 and the intersecting road, No. 67. The conduct of the parties as to the execution of the contract, the apparent attempt of both plaintiffs' agent and the defendants, was such as to show that it was the desire of all to make the new location satisfactory and as favorable in respect to traffic and sales as the old. If the contention of plaintiffs is correct, that the plans mentioned in the contract are not a part of the contract, then the necessity would arise for the introduction of extrinsic evidence as to what the intention of the parties was. The effect of such testimony would then require that the contract be construed as applying to the location of the buildings relative to the proposed curve on road No. 67. Otherwise such contract would make no provision as to what part of the tract conveyed would be occupied by the new buildings, a matter of importance to defendants. If however the plans referred to in the contract are a part thereof, then they emphasize what the evidence as to the surrounding circumstances indicates. There is no inconsistency in the two defenses, but rather each supports the other.

Our holding is that evidence of the facts and circumstances surrounding the transaction at the time of the execution of the contract was proper to be admitted and considered, and such evidence indicates that the intention of the parties as shown thereby was that defendants' station and buildings should occupy the same position relative to the intersecting road as they formerly had done.

II. Plaintiffs deny that the plans and plat of Project FA-18 are a part of the contract, and also contend that the plat Exhibit B showed the curve in road No. 67 running into road No. 30 marked "void." An examination of the evidence does not indicate that it was thus marked "void" at the time of the signing of the contract. Later, and at the time of the recording of the plat, it appears to have been so marked. The contract refers to Exhibit B in the following words: "From Sta. 1930 plus 00 plus or minus to Sta. 1940 plus 89 a strip variable ft. wide each side all land measured from centerline of proposed highway as shown on plans for Project No. FA-18 * * *." An easement in this land defendants agreed to furnish to plain-

tiffs between the stations named, the contract describing it as in section 15, township 81 north, range 6 east, in Clinton county. In return, as part of the agreement, plaintiffs were to deed to defendants other land as described in the contract heretofore set out. But it will be noted that the easement defendants were to convey is located by reference to the plans for the project.

Plaintiffs claim that the use of the words quoted above, and "the reference to plans for Project FA-18 is merely to identify the geographical location of the parcel of land to be conveyed and is a part of the description." We doubt that this explanation, or the evidence introduced in explanation, is of much aid to the contention that the plans are not a part of the contract. The description of the land to be conveyed was an essential part of the contract, and reference to the plans and location of the road was equally so. With the aid of the plans the tracts and the proposed new location of the buildings could be identified, and it is our opinion that they became by reference a part of the contract. Elmore v. Higgins, 20 Iowa 250; In re Trusteeship of Barnett, 217 Iowa 187, 251 N. W. 59; Restatement of Contracts, section 235(c). There is no claim of fraud or mistake, and we think that by this reference in the contract it provided, and defendants had a right to believe, that the contract was to be executed in accordance with such plans, including the curve shown thereon. Such plans do not contradict or vary any of the terms of the contract; they only make clear in the contract itself what without them is obscure or indefinite, and incorporated as they are they afford a more definite understanding of the intent of the parties. Nothing in the contract limits the reference to the plans to any particular purpose.

Plaintiffs call attention to sections 4755.24 and 4755.09, Code of 1939 (the same provisions being found in Code of 1935, sections 4755-c1 and 4755-b9). Section 4755.24 provides for filing with the auditor and the recorder of the county a complete right-of-way map upon the completion of the project. Section 4755.09 provides that the work shall be done in accordance with surveys, plans, and specifications filed in the office of the highway commission, except as same may be modified to meet unforeseen or better-understood conditions, "and no such modification shall be deemed an invalidating matter." We do not see that these

Code provisions affect the matter here in controversy. They provide that the commission may change its plans without rendering the project invalid, but nothing is said nor is any provision made regarding the rights of the owner injuriously affected by such change. The Code section goes no further than as above set out.

Other questions are raised by both parties, but we think such questions are disposed of by our conclusions as to the two principal propositions asserted and argued. Our holding as heretofore indicated is that the decree of the district court was right, and the same should be, and it is, affirmed.—Affirmed.

All JUSTICES concur.