WALTER L. GARDNER et al., appellants, v. CITY OF CHARLES CITY (members of City Council) and IOWA STATE HIGHWAY COMMISSION, appellees.

No. 52149.

SEPTEMBER 20, 1966.

Larson & Carr, of Charles City, for appellants.

Zastrow, Noah & Smith, of Charles City, for appellees except Iowa State Highway Commission.

James E. Graham, Assistant Attorney General, for appellee Iowa State Highway Commission.

GARFIELD, C. J.—Plaintiffs own homes in Charles City proposed to be taken or damaged by defendants, city and state highway commission, for the purpose of widening the public street incident to relocating U. S. Highway 18 for about four blocks through the city. They brought this suit in equity to enjoin defendants from proceeding with the proposal. On defendants' motion the trial court dismissed the petition on the ground it alleged insufficient ultimate facts to warrant relief. Plaintiffs have appealed. We affirm the decision.

Contents of plaintiffs' original petition, except as restated in the amended one, may be disregarded since their sole reliance here is upon the two counts of their amended petition. They allege the city and commission have entered into negotiations under which Highway 18 will be relocated for about four blocks through the city and cross the Cedar River on a new bridge to be built by the commission at Brantingham Street which is to be widened to 49 feet to provide four traffic lanes; the city proposes to furnish the right-of-way for widening the street; to do so it must purchase or condemn homes of eleven plaintiffs, relocate the sewers, and change the grade to the damage of the homes not taken.

Count I of the petition proceeds to state the proposed acts of the city are contrary to Iowa laws, unreasonable, unnecessary, arbitrary and unjust.

Count II goes on to allege plaintiffs are informed and believe the city has no funds for purchase of the right-of-way; it must pledge its credit therefor contrary to Iowa laws, and to do so is unnecessary, arbitrary and unjust.

█ I. Some settled rules of pleading may be mentioned at the outset. Where as here a doubtful pleading is directly attacked by motion before issue is joined or in the answer as permitted by rule 72, Rules of Civil Procedure, it will be resolved against the pleader. Winneshiek Mutual Ins. Assn. v. Roach, 257 Iowa 354, 366, 132 N.W.2d 436, 444, and citations; Halvorson v. City of Decorah, 258 Iowa 314, 319, 138 N.W.2d 856, 860, and citations; White v. Flood, 258 Iowa 402, 407, 138 N.W.2d 863, 866. See also Harvey v. Iowa State Highway Comm., 256 Iowa 1229, 1230, 130 N.W.2d 725, 726, and citation.

■■ While a motion to dismiss admits the truth of all well pleaded, issuable and relevant facts, it does not admit mere conclusions of fact or law not supported by allegations of ultimate facts. The ultimate facts must be pleaded. Conclusions by themselves are not permitted. Halvorson and Harvey cases; White v. Flood, all supra, and citations.

II. Both counts of the petition allege the city's proposed acts are contrary to Iowa laws, unnecessary, arbitrary and unjust. And Count I adds that the city's acts are unreasonable.

The petition does not assert any statute or right derived therefrom or refer to any statute it is claimed the city proposes to violate. See rule 94, Rules of Civil Procedure; In re Estate of Drumheller, 252 Iowa 1378, 1382, 110 N.W.2d 833, 835, 87 A. L. R.2d 1233. Nor do plaintiffs' briefs or arguments call attention to any statute they contend the city would violate and we are aware of none. To the contrary, we find statutory authority for what it is alleged the city proposes to do.

■ It is not suggested the eleven plaintiffs' homes will be taken without just compensation first being made or secured as Article I, section 18, of our state constitution requires. Nor is it contended other plaintiffs whose improved property may be damaged, injured or diminished in value by change of the established street grade will not be paid the amount of such injury or damage as section 389.22, Code, 1962, requires. We have a right to assume both the constitutional and statutory provision will be complied with.

■ We will refer to the principal statutes which confer authority upon defendants to do what plaintiffs seek to enjoin.

Section 389.1 provides in part: "Cities and towns shall have power to * * * widen * * *, improve, and repair streets, highways, avenues, * * * within their limits."

· Section 313.21, like several other applicable statutes, is too long to quote in full. The vital provision is: "The state highway commission is hereby given authority, subject to the approval of the council, to construct, reconstruct, improve and maintain extensions of the primary road system within any city or town * * *. The location of said primary road extensions shall be determined by the state highway commission."

Section 313.22 adds this to the provision last quoted: "Any city or town and the state highway commission may enter into an agreement with respect to any project for the paving of any portion of a primary road extension, * * *. Such agreement shall be a valid and binding obligation on the parties thereto."

Code chapter 306A confers broad authority on cities, towns and highway authorities having jurisdiction and control over the state's highways, "acting alone or in co-operation with each other * * *," to plan, designate, establish, alter and improve any controlled-access facilities for public use wherever such authorities are of the opinion traffic conditions, present or future, will justify such facilities; provided that within cities and towns such authority is subject to such municipal consent as provided by law (section 306A.3).

Section 408.17 confers upon the city this clear statutory authority to do what plaintiffs' Count II alleges is contrary to Iowa laws: "Cities and towns are hereby authorized to contract indebtedness and to issue general obligation bonds to provide funds to pay the cost of * * * widening, * * *, grading, and draining the right of way of any street, highway, avenue, * * * and to construct, reconstruct or repair any street improvement, and to pay the cost of land needed for right of way purposes."

Plaintiffs do not allege or suggest in argument the city proposes to exceed its constitutional or statutory debt limit, Article XI, section 3, Iowa Constitution; Code section 407.2.

Section 404.7 empowers municipal corporations (2) to annually cause to be levied for the street fund a tax up to seven mills on the dollar on all taxable property within the corporate limits to be spent for widening, constructing and grading any street, highway or avenue; (10) for paying damages for change of grade as required by section 389.22, supra; and (13) for any other purpose having to do with streets specifically authorized by law.

Section 389.3 provides the expenses of street improvements referred to in 389.1, supra, may be paid from the street fund of cities and towns or by assessing abutting and adjacent property according to the benefits derived from the improvements.

Finally, section 368.37 confers upon municipal corporations power to purchase or condemn, "pay out of the general fund or

the specific fund, as may be provided, enter upon and take any lands * * * for such public purposes and as an incident to such other powers and duties conferred upon such corporations as make necessary or reasonable the acquisition of such land * * *."

 III. The conclusion stated in each count of the petition that the city proposes to violate Iowa laws cannot be accepted. The allegation that what the city proposes to do is also unnecessary, arbitrary and unjust—and in Count I that it is unreasonable—is also a mere conclusion not supported by any allegation of ultimate facts in the petition. Harvey v. Iowa State Highway Comm., supra, 256 Iowa 1229, 1231, 1232, 130 N.W.2d 725, 726, 727, is controlling upon this point.

The Harvey petition alleged in some detail no public need or convenience justified relocating a primary highway and building a new bridge over the Des Moines River at a cost of between 5 and 6.5 million dollars when the present highway could be repaired, widened and resurfaced to meet all anticipated future needs for not to exceed 1.5 million dollars; to do what was proposed would constitute an arbitrary and unnecessary spending of public money and taking of plaintiffs' real estate. In affirming dismissal of the petition on motion of the state highway commission we say:

"This paragraph is a pleading of conclusions which are not admitted in the motion unless supported by the ultimate facts just set out. Plaintiffs' quarrel is with the decision of the commission to relocate portions of Highway 92 rather than repair and widen it in its present location. No other ultimate facts are pleaded. No bad faith, fraud or illegality is alleged. Accepting, for the purposes of the motion, plaintiffs' figures on the comparative costs of repairing and resurfacing the highway in its present location and the cost of relocating the road, and assuming that the repaired road would be adequate for all anticipated future needs, do these facts constitute such illegal and arbitrary action on the part of the commission that we may interfere? We conclude, as did the trial court, that they do not.

"When the highway commission acts within the powers conferred upon it by statute its discretion is broad and plenary. In the absence of fraud, bad faith or arbitrary abuse of that discre-

512

tion, the courts have no power to control the manner in which it shall exercise the authority with which it has been invested [many citations].

"* * * We are asked to subject the commission's judgment to review by the courts upon a pleading that an adequate road can be provided at a much cheaper cost in some other manner. Such a holding would have far-reaching effects. There have probably been very few miles of road constructed in the state about which there has not been a difference of opinion as to its advisability and practicality. To permit a person to base an action upon such reasons and enjoin further proceedings until a factual determination is made, could stall the whole road building program and require the commission to spend much time and money justifying its decisions in court. Such decisions must necessarily be made by commission and the courts would be unduly interfering in an administrative matter if it undertook to impose its judgment on the commission for the reasons pleaded."

The above quotation seems to be in accord with the general rule stated in 30 C. J. S., Eminent Domain (1965), section 401, page 491: "As a general rule the exercise of the power of eminent domain by a governmental body may not be stayed or interfered with by injunction in the absence of fraud, abuse of discretion, or other gross impropriety, or unless the owner is in some way illegally deprived of his rights in violation of the constitutional or statutory provisions governing the exercise of the power of eminent domain; * * *."

Race v. Iowa Electric Light and Power Co., 257 Iowa 701, 707, 134 N.W.2d 335, 339, cites the Harvey decision with approval. See also Porter v. Iowa Highway Comm., 241 Iowa 1208, 44 N.W.2d 682; Ermels v. Webster City, 246 Iowa 1305, 1309, 1310, 71 N.W.2d 911, 913; 27 Am. Jur.2d, Eminent Domain, section 504, page 460.

IV. Plaintiffs' argument bases their claim to reversal largely on the fact it is proposed to take or damage their homes for the contemplated improvement. They apparently feel this entitles them to a review of the proposal by a court of equity and to injunctive relief. Boiled down, plaintiffs thus conclude their argument: "We are not here to determine the legality of defendants' proposed action, its reasonableness, the necessity of the

condemnation, nor whether it is arbitrary and unjust. We are here to discover whether a homeowner can no longer come to court for protection when an administrative body wants to take his home for a public use, whether he can try out the legality of his home being taken by the city to deliver to the highway commission for state highway purpose. That is the entire question. * * * We believe that though the law used to protect a man's home from condemnation for highway purpose and does not do so now the home is still his castle and he has the same right to protect it he always had."

As the concluding sentence indicates, an Iowa statute of long standing (section 306.7, Codes 1946, 1950) provided in pertinent part: "No road shall, without the owner's consent, be established * * * so as to cause the removal of any dwelling house * * *." This provision was repealed in 1951 by chapter 103, section 1, Laws Fifty-fourth General Assembly.

"It is elementary that all private property is held subject to the right of eminent domain, except in cases specifically exempted by statute." Hoover v. Iowa State Highway Comm., 210 Iowa 1, 7, 8, 230 N.W. 561.

"Inasmuch as all property is subject to the power of the state to take it for public use, a dwelling house is of itself no more exempt from condemnation for public uses than any other property. It is exempt only when the law so provides." 26 Am. Jur.2d, Eminent Domain, section 108. "A homestead may be condemned for public use." 29A C. J. S., Eminent Domain, section 72.

No authority has come to our attention which supports plaintiffs' argument above referred to. We are unaware of any rule of law which entitles homeowners to a judicial review of the decision of a state agency to take their homes for a public improvement authorized by law under circumstances where non-homeowners of property would have no such right of review.

It is understandable plaintiffs do not want their homes taken or damaged for this improvement. Probably most owners against whom condemnation is instituted are unwilling to part with their property. If they were willing it is probable no condemnation would be necessary. However, there can be little

doubt plaintiffs have failed to plead a case which entitles them to injunctive relief.

We have not deemed it necessary to summarize all the contents of plaintiffs' amended petition or mention considerations which might well have impelled the city and highway commission to negotiate for the improvement sought to be enjoined. We may say, however, it appears from the petition and the plat filed as part of it that at a point one block southwest of the proposed new bridge U. S. Highway 18 merges with U. S. Highway 218, crossing the state from southeast (at Keokuk) to northwest. We may take judicial notice of the fact both highways are heavily traveled. And it is apparent four traffic lanes will facilitate traffic moving from one highway to the other.—Affirmed.

All JUSTICES concur.